service upon the public highway at the time of delivery. It is undisputed that petitioner did not deliver a certificate of adequacy for the car in question, but petitioner, noting that the MV-50 form delivered to the purchaser described the vehicle as junk, argues that the car was not sold for use on the public highway. Evidence to the contrary, however, is overwhelming. The car was sold to be used by one Michael Welch, a high school student. Both Welch and his stepfather, Richard Boisey, negotiated the purchase of the car, a 1972 model, on December 4, 1978 for $1,395. Because Welch's age presented financing problems, the MV-50 form was made out to Boisey. Boisey immediately transferred the car to Welch; Welch immediately registered the car and took possession of it; and almost as immediately he encountered mechanical difficulties. In addition to the testimony of Welch at the hearing, petitioner's representative admitted that he was the salesman; that he participated in arranging financing, including insurance on the car; arranged for its inspection; gave verbal warranties to Welch; and acknowledged that he knew the car was purchased for Welch. Such evidence is patently inconsistent with a sale of a car for junk and is clearly indicative of a deliberate attempt to circumvent the regulation and its parent statute, section 417 of the Vehicle and Traffic Law. Petitioner also contends that the Administrative Law Judge erred in: (1) allowing petitioner, a corporation, to be represented at the hearing by its officer and not by counsel, and (2) refusing to grant an adjournment when Boisey was not present at the hearing. On the first point, petitioner may not rely on CPLR 321 (subd [a]) which applies in civil actions and not to proceedings of this nature. Petitioner chose to proceed without counsel and without objection, and should not now be heard to say that it should not have been permitted to do what it chose to do. Nor does the refusal of the Administrative Law Judge to grant an adjournment because of the unavailability of Boisey require reversal. In light of the testimony of Welch and petitioner's salesman, we agree with the Judge's finding that Boisey's testimony would have been cumulative. Finally, we do not regard the punishment as excessive. Subdivision (b) of section 78.13 of the regulations is designed to protect not only the consumer but the general public as well *(Pierce v International Harvester Co., 61 AD2d 255)*. In view of the seriousness of the matter, the punishment is not so disproportionate to the offense as to shock one's sense of fairness *(Matter of Pell v Board of Educ., 34 NY2d 222)*. We have reviewed the other issues raised by petitioner and find them to be without merit. (Article 78 proceeding transferred by order of Onondaga Supreme Court, Hayes, J.) Present — Dillon, P. J., Simons, Hancock, Jr., Moule and Schnepp, JJ.

■ MARVIN T. HUBBARD, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Appeal No. 1.) — Judgment unanimously affirmed, with costs to claimant, for the reasons stated at Court of Claims and same memorandum as in *Loucks v State of New York* (83 AD2d 761). (Appeals from judgment of Court of Claims, Moriarty, J. — appropriation.) Present — Dillon, P. J., Simons, Hancock, Jr., Moule and Schnepp, JJ.

■ MARVIN T. HUBBARD, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Appeal No. 2.) — Judgment unanimously affirmed for the reasons stated at Court of Claims and same memorandum as in *Loucks v State of New York* (83 AD2d 761). (Appeals from judgment of Court of Claims, Moriarty, J. — appropriation.) Present — Dillon, P. J., Simons, Hancock, Jr., Moule and Schnepp, JJ.

■ JOAN H. HOFFMAN, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Appeal No. 3.) — Judgment unanimously affirmed, with costs to claimant, for the reasons stated at Court of Claims and same memo-

randum as in *Loucks v State of New York* (83 AD2d 761). (Appeals from judgment of Court of Claims, Moriarty, J. — appropriation.) Present — Dillon, P. J., Simons, Hancock, Jr., Moule and Schnepp, JJ.

■ MARY E. LOUCKS et al., Respondents-Appellants, v STATE OF NEW YORK, Appellant-Respondent. (Appeal No. 4.) — Judgment unanimously affirmed, with costs to claimants, for the reasons stated in the memorandum decision at Court of Claims, Moriarty, J. Memorandum: We add only that here, and in related cases decided herewith presenting one or both of the same issues *(Hubbard v State of New York,* 83 AD2d 760; *Hoffman v State of New York,* 83 AD2d 760) we find no error in the court's determination to add to the value of the appropriated land the value of man-made improvements consisting of ponds and developed springs. They were treated as such by both the State's appraiser and the claimants' appraiser. As land improvements, they were properly set forth separately (22 NYCRR 1200.25 [a] [1]; *Kupersmith v State of New York,* 40 AD2d 738). Nor did the court err in adding the value of saleable timber to the value of the land in computing the whole value. The land use would not be affected by the removal of the timber. While it is true that the measure of damages is the market value of the land as a whole and not that of its enhancing components, evidence may be introduced to show that the land contains valuable assets *(Cross v State of New York,* 36 AD2d 361, 363 [Herlihy, P. J., concurring]). It was the intention of claimants' appraiser to show a value of the whole which included the enhancement value of the timber, and although there may be some mechanical defect in the court's computation, its purpose was also to show the value of the whole. The ultimate finding of value should not be disturbed *(Duksa v State of New York,* 34 AD2d 1053). (Appeals from judgment of Court of Claims, Moriarty, J. — appropriation.) Present — Dillon, P. J., Simons, Hancock, Jr., Moule and Schnepp, JJ.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNETH GASTON, Appellant. (Appeal No. 1.) — Judgment unanimously affirmed. Memorandum: On July 10, 1974 officers from the Buffalo Police Department obtained a warrant to search the upper left apartment at 234 Woodlawn, rented by Daffney Giles, who was home at the time of the search. Police seized papers bearing defendant's name along with marihuana and drug paraphernalia and, according to the inventory sheet, one eighth of an ounce of a narcotic drug. Defendant, who was not on the premises at the time of the search, was not immediately arrested. According to testimony taken at a speedy trial hearing in 1978, defendant heard police were looking for him and voluntarily went to police headquarters sometime during the next two days. A City Court docket sheet dated July 12, 1974 indicates that defendant was arraigned on that date, but only on the misdemeanor charge of criminally using drug paraphernalia in the second degree (Penal Law, § 220.50, subd 2). Two other charges (Penal Law, § 220.09, subds 1, 10) were listed on the docket sheet but were X'd out. On July 16, 1974 one of the officers who had participated in the July 10 seizure swore out a felony complaint accusing defendant of possessing marihuana and cocaine on July 10 (Penal Law, § 220.09, subds 1, 10). An arrest warrant was issued pursuant to the felony complaint. No attempt was made to execute the warrant until November 22, 1974 when police learned that defendant would be in possession of cocaine. At around 11:30 that night police went to the Quarry Square Apartments and approached defendant, who had entered a cab. Police opened the door of the cab, discovered the cocaine, and arrested defendant pursuant to the July 16 arrest warrant. Motions to suppress the cocaine seized on November 22 and the items seized on July 10 were denied. A jury convicted defendant of criminal possession of a controlled substance in the fifth degree based upon the November 22 seizure. Later